MOSE DEAN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Larceny—Claim of Title to Property Stolen—Sentence in the Alternative.

1. In all cases where one in good faith takes another's property under claim of title in himself, he is exempt from the charge of larceny, however puerile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another, believed to be the true owner. Still, if the claim is dishonest—a mere pretence—it will not protect the taker.

2. In charges of larceny where the taking is open, and there is no subsequent attempt to conceal the property, and no denial, but an avowal of the taking, a strong presumption arises that there was no felonious intent, which must be repelled by clear and convincing evidence, before a conviction is authorized.

3. Under the provisions of Chapter 4026, act of 1891, where the primary penalty imposed for crime is a fine and the costs of prosecution only, the imprisonment for non-payment of such fine and costs should be in the *county jail* instead of the State penitentiary.

Writ of error to the Circuit Court for Jackson county

The facts in the case are stated in the opinion of the court.

*John H. Carter*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

TAYLOR, C. J.:

At the Spring term, 1898, of the Circuit Court of Jackson county the plaintiff in error was convicted of the crime of larceny of an ox, and was sentenced to pay a fine of one hundred and fifty dollars and costs, and in default in the payment thereof that he be confined at hard labor in the State penitentiary for the period of six months. A reversal of this judgment is sought by writ of error.

The only error assigned and urged is, that the evidence was not sufficient to sustain a conviction. The defence set up was that the ox alleged to have been stolen was not taken with the *animo furandi* necessary to the crime of larceny, but was taken with the *bona fide* belief on the part of the defendant that the ox belonged to him, and that he had a right to take it. Some of the testimony for the State, and the evidence for the defendant, tended strongly to sustain such defence. It showed that the defendant took the ox about mid-day openly, in the presence of several persons, whose assistance he procured in capturing it, asserting at the time that the animal was his property, and that he led it off on the public highway to his home in the neighborhood; that he sold it shortly afterwards to another party in the same neighborhood, and the party to whom he sold it worked and drove it around in the neghborhood where the prosecuting and alleged owner lived, frequently driving it to a small town where the prosecuting and alleged owner had his home. Several witnesses, and the defendant himself, swearing positively that the animal belonged to the defendant, that he had raised it from a calf and still owned its mother. The alleged owner and prosecuting witness testified simply that the animal belonged to him, that he had missed it for about

a year and that when it voluntarily came up to his place it had a bell on and that one of his employes turned it in his enclosure; that shortly afterwards the defendant's wife and several other parties came to his place and after looking at the animal in his pasture laid claim to the ox as being the property of the defendant. The bell that the animal had on when it came up to the prosecutor's place was shown to belong to the party to whom the defendant had sold the ox. There was no evidence tending to show any concealment on the part of the defendant either of the fact of his having taken the ox or of his assertion of ownership thereof, or of the fact of his having sold it to the third party to whom he did sell it, and there was nothing to show any alteration or obliteration of the animal's marks, though there was testimony to show that the ox was in the mark of the prosecutor and not in that of the defendant. There was testimony also to show that the defendant, after the ox had been taken possession of by the prosecuting witness, applied to a justice of the peace for process to recover possession of the animal from the prosecuting witness.

The rule as laid down in 2 Bish. Cr. Law, §851, and approvingly cited in Baker v. State, 17 Fla. 406, and in Charles v. State, 36 Fla. 691, 18 South. Rep. 369, is that "in all cases where one in good faith takes another's property under claim of title in himself, he is exempt from the charge of larceny, however pureile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another, believed to be the true owner. Still, if the claim is dishonest—a mere pretence—it will not protect the taker." And in Baker v. State, *supra*, this court said: "The gist of the offence is the intent to deprive another of his property in a chattel either for gain or out of wantonness or malice

to deprive another of his right in the thing taken. This can not be where the taker honestly believes the property is his own or that of another, and that he has a right to take possession of it for himself or for another, for the protection of the latter." Another rule, clearly and correctly laid down, as we think, in McMullen v. State, 53 Ala. 531, is that "where the taking is open, and there is no subsequent attempt to conceal the property, and no denial, but an avowal of the taking, a strong presumption arises that there was no felonious intent, which must be repelled by clear and convincing evidence, before a conviction is authorized." Applying these principles to the facts as disclosed by the record in this case, we think that the ends of justice will best be subserved by the grant of another trial to the defendant, as, in our judgment, the evidence gives rise to a strongly reasonable doubt as to the presence in the case of that *intent to steal* that is necessary to make out larceny.

It is proper for us to point out another error in the *sentence* imposed, though it has not been assigned as error, and no notice of it is taken in the briefs of counsel. The primary penalty imposed here was a money fine and the costs of prosecution, but in case of default in the payment of such fine and costs the defendant was sentenced to imprisonment in the State penitentiary. This court has repeatedly held that under the provisions of Chapter 4026, act of 1891, where the primary punishment imposed was a fine and costs of prosecution only, the court should fix a period of imprisonment *in the county jail*, instead of in the State penitentiary, for nonpayment of such fine and costs. Bueno v. State, 40 Fla. 160, 23 South. Rep. 862; Eggart v. State, 40 Fla. 527, 25 South. Rep. 144.

The judgment of the court below is reversed and a new trial awarded to the defendant.