OSCAR BIRD, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

In larceny it is essential to a conviction that the property was taken *"animo furandi;"* and where it clearly appears that the taking was perfectly consistent with honest conduct, although the party charged with the crime may have been mistaken, he can not be convicted of larceny.

This case was decided by Division A.

Writ of error to the Circuit Court for Jefferson county.

*Statement.*

At the spring term, 1904, of the Circuit Court of Jefferson county the plaintiff in error was tried and convicted of the larceny of a bull of the value of seven dollars of the property of Turner Sauls, and was sentenced to the State Prison for two years, which sentence and judgment the plaintiff in error seeks to reverse in this court. A motion for a new trial was made on the grounds that the verdict was contrary to the evidence and weight of evidence, contrary to law and to the charge of the court. On the

trial the State proved by Herbert Roberts that he was doing
business as a butcher in 1903 at Monticello, Florida; that
sometime before June the plaintiff in error told him that
he had a black bull he would sell witness, but it had strayed
off, and as soon as he found it he would let witness
know. The plaintiff in error, Bird, came into town one
morning in June and told the witness he had found the bull
and had it in his field at home. Witness went out that
afternoon, found the bull in Bird's cow pen about four miles
from town where he lived, bought the bull for $4.50,
butchered it that afternoon in Bird's pen, and brought the
meat and hide back with him. The mark was a split in
both ears, and underbit in right ear. A day or two later
Turner Sauls came in and examined the hide and mark and
claimed that it was his animal.

Turner Sauls testified for the State that he had a small
black bull which took up with the cattle of Lem Shuman
last year (1902) who lived about a mile and a half from
witness on the road from witness' place to town. He fre-
quently saw the bull with Shuman's cows when passing,
and told Lem it was his. He knew it was his. It was
marked split in each ear and underbit in right ear. In
July, 1903, he heard defendant had been to Shuman's and
carried away this bull *as his own*. He came to Monticello
and found the hide with Mr. Roberts and recognized it as
his bull by the color and mark. It was something over a
year old and weighed one hundred to one hundred and
fifteen pounds. He did not know what butchers were
giving for beef, whether four or five cents. If he had
butchered it and sold it by retail in Monticello he could have
realized from seven to ten dollars for it. All this occurred
in Jefferson county, Florida.

Jack Sauls, son of previous witness, testified as to mark
of the bull, that it took up with Shuman's cattle, saw it
frequently in passing from town to his father's, and identi-
fied the bull as his father's property by the hide and ear
marks.

Eddie Lary testified for the State that he lived near Shuman's, saw defendant carrying away a little bull, had it roped and passed along the road by witness' house just before sundown. Had seen it with Shuman's cows but did not know who owned it. Defendant said it belonged to him and had strayed off and he had just found it and was carrying it home.

George Lary testified for the State that he knew the little black bull claimed by Sauls that used to run with Shuman's cows and saw it frequently with his cattle. Lived at same place with Oscar Bird in 1902, about two and a half miles from Shuman's. Oscar Bird had a cow and a calf, a dark colored bull calf. He thinks it was born in the early part of 1902, but was unmarked when he moved away, for he remembered seeing it on December 26th, 1902. Oscar Bird's mark was an open split and underbit in the right ear and split in left ear. The cow had this mark.

The defendant (plaintiff in error) introduced the following witnesses who testified in substance as follows: Dan Neil testified that he lived near defendant Oscar Bird last year (1902) and year before. They worked land on same place. Defendant had a cow and a dark mole colored bull calf born in the early part of 1902. Calf was marked open split and underbit in the right ear and split in the left ear, and defendant marked his stock with this mark. The calf strayed off in February or March, 1903. Remembered defendant's looking for it while we were splitting rails for Mr. Lamar. Witness lived about two and a half miles from Shuman's. Did not see the black bull defendant took from Shuman's, and didn't know that it was one defendant lost.

James Burney testified that he lived with Oscar Bird last year (1902) and year before. He had a cow and a dark colored bull calf. The calf strayed off early last year and was about a year old. Bird's mark is open split and underbit in right year and in left ear a split. The calf was so marked before it strayed off. His hogs are marked same way and so was the mother of the calf. An open split is *only*

*a deeper split.* Did not see the bull found by defendant with Shuman's cows, and didn't know whether it was the one lost or not.

Annie Bird, wife of the defendant, testified that she saw the bull brought home and sold to Mr. Roberts. Defendant brought it home roped, put it in a stall that night and turned it out next day on the green. In the evening drove it in the cow pen and Mr. Roberts came out, bought and butchered it there. They raised it from a calf and witness recognized it as defendant's as soon as he brought it home It was certainly his. It had been gone four or five months. She knew it by the mark and color.

Defendant testified in his own behalf that he owned a milk cow that had a dark colored bull calf born in the early part of 1902. He milked the cow that year and marked the calf in his mark, a split in each ear, and an underbit in the right ear. About February, 1903, when the calf was about a year old and after it was marked it strayed off. He made inquiry and search for it in the neighborhood, but did not find it until about first of July, and then found it with Lem Shuman's cows near his house. He recognized it by his mark and its color; thought it was a little darker in color than when it went off in February. Told Shuman it was his yearling and asked him to let him drive it in his (Shuman's) pen so that he could catch it and carry it home. Shuman granted his request and said . nothing about any one else claiming it. This was in the afternoon and he drove the yearling into Lem Shuman's pen with his cows, roped it and carried it to his house along the public road in the day time. Lived about two and a half miles from Shuman's. Put the yearling in a stable at home at night and put it out to feed the next day. Had previously spoken to Mr. Roberts about selling him the yearling. He came to defendant's home that evening, looked at it in the cow pen where defendant then had it. Roberts offered four and one-half dollars for it. Defendant wanted more but Roberts said that was all he would give as it was not fat. Sold

it to him and he butchered it in defendant's pen and carried the meat and hide to Monticello. It was defendant's yearling, he is satisfied of. it, and his wife and children all recognized it as the yearling that had strayed off. Defendant never knew that Mr. Sauls set up any claim to this yearling till he was arrested for stealing it. Defendant took it honestly and openly as his property, carried it away and sold it publicly in the broad day time, and had no intention of stealing it. Believed then and now it was his property.

*T. L. Clarke* for plaintiff in error.

*W. H. Ellis,* Attorney-General, for the State.

HOCKER, J., (*after stating the facts*).—In considering the evidence in this case ·we can discover no substantial difference in probative effect between it and the evidence in *Dean v. State,* 41 Fla. 291, 26 South. Rep. 638. In both cases the animals were taken openly in the daylight under claim of ownership—in the Dean case in the presence of several witnesses—in this case in the presence of at least one witness. In both cases they were led to the defendants home, along the public highway. In each case several witnesses swear that the animals belonged to the defendants and that they had raised them from calves. In each case the animals were sold openly, and there is not a particle of evidence to show in either case concealment or an attempt at it. In the case at bar there can be no question that the defendant owned a bull calf of about the same age as the one in dispute, of about the same color and bearing a mark so nearly resembling that of the prosecutor that an ordinary person might not readily distinguish between them. In this respect the evidence for the State in the Dean case was stronger than in the one at bar. The defendant's bull calf. had strayed off about February and the fact that in July the calf in dispute was somewhat darker than the

defendant's calf was in February was not such a circumstance as should have necessarily advised him that it was not his own. When he took the calf he was not advised by Shuman that any one else claimed it, and the uncontradicted evidence is that he did not know that any one else claimed it. We are unable to discover in the record any testimony that the defendant took and appropriated the bull calf *animo furandi.* His acts as shown by the record are perfectly consistent with honest conduct, however mistaken he may have been. In *Long v. State,* 44 Fla. 134, text 140, 32 South. Rep. 870, this court said that the second head-note in *Dean v. State,* must not be understood as stating a rule of law to be given in charge to a jury in a prosecution for larceny, but a presumption of fact which the jury may apply, and which may guide the court in cases where it is applicable in determining the sufficiency of the evidence to support a verdict of guilty. This court further said that "where the taking is open in the presence of others, not amounting to a robbery, and there is no concealment, or in short where the testimony as to the taking standing alone raises a presumption of fact in favor of an innocent taking, and there is nothing in it from which a jury may legitimately infer a felonious purpose, then a verdict against the accused can not be sustained, and it would be the duty of the court to set it aside." This doctrine is applicable to the case at bar. The evidence disclosed by the record is not sufficient to sustain a conviction for larceny. It is, therefore, considered and ordered that the judgment be reversed and a new trial awarded, at the cost of the county of Jefferson.

TAYLOR, C. J., and COCKRELL, J., concur.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.