J. Shaw Thompson, Plaintiff in Error, v. State of Florida, Defendent in Error.

1. A Circuit Court in the proper county acquires jurisdiction on a change of venue in a criminal case even though the clerk's certificate substitutes for the statutory words "relating to the case," the words "so far as the same relates to the indictment against A for murder," and actually transmits two indictments for murder against A, it clearly appearing that all the proceedings on the change of venue had reference only to the second indictment which is sufficiently identified.

2. Section 2934 of the Revised Statutes of 1892, as to the clerk's duty in transmitting record on change of venue, requires certification only of the copies of the record entries. Original papers are to be transmitted by the clerk, but no certificate is required.

3. Even though the clerk transmits on change of venue two original indictments for the same crime, jurisdiction is not lost thereby when it clearly appears upon which indictment the change was made and trial was had.

4. A jury drawn from the box by the court at the end of a calendar year to serve for the ensuing week of a regular term does not become disqualified to sit by reason of the fact that before a case is actually called a new jury box has been prepared for the year by the county commissioners. The drawings are to be made from the box provided at the time of the drawings.

5. The refusal of the trial court in a criminal case to order a "view" in another county will not be disturbed, no abuse of discretion being shown.

6. Objections to questions that may bring out proper testimony are properly overruled.

7. A motion to strike testimony must not be too broad.

7—S. C.

Where part of the testimony so sought to be stricken is clearly proper, the motion may for that reason be denied.

8. Testimony for the State in rebuttal to contradict a material fact brought out by the defense is proper.

9. The primary penalty imposed being a money fine and costs and in default of payment imprisonment in the State prison, the judgment is reversed for proper sentence. Dean v. State, 41 Fla. 291, text 294, 26 South. Rep. 638.

This case was decided by Division A., writ of error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the Court.

*R. L. Anderson,* for Plaintiff in Error.

*W. H. Ellis,* Attorney General, for the State.

COCKRELL, J.: J. Shaw Thompson was indicted on April 12, 1905, in Citrus County, for the murder of James M. Tillis. A change of venue was granted at his instance, and the trial had in Marion County, where he was convicted of manslaughter, and after overruling motions for a new trial and in arrest of judgment, the court on January 13, 1906, sentenced him to pay a fine of $3,000 and costs, and in default thereof to imprisonment in the State prison at hard labor for five years. From this he seeks relief here by writ of error, assigning forty-five errors.

Taking up such errors as are material and properly presented, we shall dispose of them in their logical and chronological order.

First, then, to be considered, is the attack on the proceed-

ings upon the change of venue. The change was made from Citrus County to Marion County, an adjoining county in the same, the Fifth Judicial Circuit, and the only section of the statute which we are called upon to consider is as follows:

"2934. Clerk to Transmit Record.—When a change of venue is ordered, the clerk shall immediately enter the proceedings of record and transmit all the original papers filed in the case, with a certified copy of the entries in the record relating to the case, to the Clerk of the Circuit Court of the county to which the venue has been changed, retaining, however, a copy of all the papers transmitted."

It appears that the Clerk of Citrus County transmitted five pages of copy taken from his court minutes, which he certifies "contain all the minutes of the Circuit Court of said County at its Spring Term, 1905, so far as the same relates to the indictment against J. Shaw Thompson for murder." These minutes disclose that there were two indictments filed on the same day against Thompson for the identical offense to each of which he pleaded not guilty. It further appears, however, that when he was arraigned upon and pleaded to the "second indictment" he moved for a continuance of "this cause," which being denied, "this cause" was set for April 14, 1905, and a venire for seventy-five persons ordered. "Then the defendant presented affidavits" showing excitement and prejudice against the defendant it was ordered that a change of venue be had herein and that this cause be changed to Marion County, Florida, in this Circuit, for trial, and that the case be set for trial on Monday, the 8th day of May, 1905, at the Court House in Ocala, of said county, etc.

There may be some confusion in the minds of the hyper-critical as to the cause of the words "cause" and "case" in the order of the court, as also in the language of the certificate of the clerk substituting for the statutory phrase "relating to the case," the words "so far as the same relates to the indictment against J. Shaw Thompson for murder." From the collocation, the immediate sequence it appears with sufficient clearness and definiteness that the venue was changed only as to the case made by the second indictment against Thompson for the murder of Tillis, and while the Clerk of Citrus County construed the words "relating to the indictment," and being broader in their meaning than would be the statutory phrase, and so actually transmitted the first indictment and proceedings thereunder, yet every essential prescribed by the statute for change of venue has been complied with.

A criticism is further made that the clerk did not certify to the transmission of the original papers. The quoted section of the law does not require certification of anything other than the copies from the record entries. He is ordered merely to transmit the original papers, which appears to have been done.

It is further objected that there is confusion as to the indictment upon which he was tried. As we have said only the second indictment was transferred. There was some uncertainty in our minds from the transcript as originally presented to us as to which of the indictments copied therein was filed first, a penciled mark No. 2 only being placed upon the one copied last therein, but upon a suggestion from this court to the Clerk of Marion Coun ty, this uncertainty has been cleared away by a proper certificate from said clerk. The difficulties encountered by the court in Curry v. State, 17 Fla. 683, are not present

here and the decision there is in nowise affected or modi‑ fied by what we now say.

II. Next, as to the drawing of the jury. We may say here parenthetically that a plea in abatement based upon the drawing of the grand jury was offered and its filing refused. This point sought to be raised by this plea has recently been overruled by this court in Colson v. State, 51 Fla. 19, 40 South. Rep. 183, and is no longer insisted on. It is urged that the court erred in drawing from the jury box on December 28, 1905, regular venire for the ensuing week, and a special venire for this cause returnable January 3, 1906. The theory of the plaintiff in error is that all the jurors so drawn and summoned are incompetent and disqualified to serve in a cause set for January 3d, by reason of the fact that on said day the County Commissioners had met in regular session, selected jurors for the year 1906, and completed the jury box for that year. This theory is altogether untenable. The statutes prescribe that the County Commissioners shall make out a new jury box each year at their meeting, to be held the first week in January in each year, or "as soon thereafter as practicable," but does not prescribe any particular tenure or time when those whose names are so placed in the box shall be eligible or liable to service as jurors. That the act is not to be construed so as to make the eligibility or liability cease in January, is made manifest by the pro‑ vision that the judge shall draw at the close of each term a jury for the next regular or special term, and in the large majority of the counties of Florida the drawing at the regular Fall terms would be for the regular Spring terms, which carry over much beyond January, as the words Fall and Spring indicate. It is clear that the only sensible practicable construction of the jury statute is

that the "drawings" are to be made from the box provided by law at the time of the drawing, but that the time during which those so drawn may be required to serve is regulated by other provisions of the act. The objection was properly overruled.

Before closing his evidence the defendant demanded a view of the premises, tendering the necessary costs and expenses attendant thereon. In his application he says, under oath, that it is not possible to obtain a correct, full and adequate understanding of the places and objects to which the evidence relates from the study of plats or maps, and the testimony of witnesses, and that a view is necessary because of the peculiar character of the case at-tempted against him. This affidavit is accompanied by the joint affidavit of five others who say they are familiar with the locality, but who fail to state they are familiar with the evidence actually adduced at this trial. It is at least doubtful whether error can be assigned on the re-fusal in a criminal case to order a view of the premises, especially is there doubt when the application is made during the progress of the trial and before the evidence is completed and the grant of the application would require the removal of the jury to another county. In civil cases where the statute seems to be broader, we have held that the necessity for ordering the view is in the sound discretion of the trial court. Coker v. Merritt, 16 Fla. 416. In criminal cases the statute is very meagre. It says simply: "The court may order a view by the jury." Rev. Stats. of 1892 Sec. 2918. It is probably true that in a majority of cases a view of the premises may be more satisfactory than plats or oral testimony, but the convenience and dispatch of the public business would be seriously impeded if it were the rule rather than the unusual excep-

tion to order a "view," and should we assert our power to revise the court's action we can find nothing in the record before us calling on us to exercise it now.

Upon the trial exceptions were reserved upon the overruling of one question and the refusal to strike certain testimony. One witness having testified that he, with Tillis, the deceased, and two others, constituted a hunting party encamped near Shaw Thompson's house, was asked what they were doing the afternoon of the shooting, and stated they were shooting squirrels. He was further asked when he last saw Tillis, and answered just before sundown—about 5 o'clock. (The shooting occurred about three hours later). Then this question was asked: "Did you have any conversation with him the last time you saw him alive as to what he was going to do," and answering in the affirmative, was told to "state what passed between you." To this an objection was interposed and overruled. There was no error here. The question might well have brought out proper testimony. The witness detailed the meeting between him and Tillis, who give him a squirrel, and in return received some matches. Tillis inquired if he could go around the head of the springs to the camp, and being told that it was possible, replied that he would undertake it and shoot squirrels on the way. The defense then moved to strike the answer of the witness detailing what the deceased did and said, and also moved to strike the answer to a former question in which it was stated that the deceased and others were hunting squirrels. The first motion was not acted upon, except insofar as it was embraced and observed in the last motion, which must therefore be treated as one single motion; there was but one exception taken to the denial of the motion. The grounds of the motion are stated to be that the answer is

incompetent; that the acts and declarations of the deceased in the absence of the defendant and not known to him are inadmissible; that there is no sufficient foundation laid for the introduction of such testimony, and generally, that it is otherwise improper and inadmissible. The motion was too broad and was properly denied for that reason. It sought to strike not only what may have been said by Tillis, but also the explanation of a fact testified by the witness of his own knowledge, which tended to explain the presence of Tillis in that locality. There might be some difficulty in justifying the refusal to strike the uncommunicated statement of Tillis in Thompson's absence had such point been properly presented in the record, nor is its materiality over manifest. This difficulty has, however, been obviated by the form of the motion, and it is not insisted here that the other testimony included in the motion was improper.

It is next argued there was error in the refusal to strike the testimony to the effect that the gun found under the body of the deceased was cocked the next morning by Lee Thompson, a cousin of the accused. This testimony was in rebuttal. A witness for the defense had testified that on the morning after the homicide the gun of the deceased was found cocked. The State in rebuttal recalled a witness or witnesses who testified the gun was not cocked when first seen by them, but that the cocking was done that morning by Lee Thompson. No argument is required to show the pertinence and propriety of this evidence.

Various assignments are predicated upon the instructions given and refused. Many of them are based upon charges relating wholly to the crime of murder. The defendant was acquitted on this aspect of the indictment, and under repeated ruling of this court, error cannot be

predicated on such charges. The charges given by the court bearing upon the crime of which the accused was convicted have been approved by this court in many opinions, and the instructions requested by the defense, which were refused insofar as they were correct, were fully covered by those given by the court.

The evidence is not wholly satisfactory to us, but after a careful consideration and comparison of the whole record we cannot say that the court erred in refusing a new trial based upon the insufficiency of the evidence to support the verdict.

The errors urged upon us have been examined, and all are overruled. There is, however, an error in the sentence which we think calls for a reversal of the judgment and sentence and that the cause be remanded for proper sentence. Webster v. State, 47 Fla. 108, 36 South. Rep. 584.

"The primary penalty imposed here was a money fine and the costs of prosecution, but in case of default in the payment of such fine and costs the defendant was sentenced to imprisonment in the State penitentiary. This court has repeatedly held that under the provisions of Chapter 4026, Act of 1891, where the primary punishment imposed was a fine and costs of prosecution only, the court should fix a period of imprisonment *in the county jail,* instead of in the State penitentiary, for non-payment of such fine and costs." Dean v. State, 41 Fla. 291-4, 26 South. Rep. 638, citing Bueno v. State, 40 Fla. 160, 23 South. Rep. 862; Eggart v. State, 40 Fla. 527, 25 South. Rep. 144.

Reversed and remanded for proper sentence, the costs of this appeal to be taxed against Citrus County.

SHACKLEFORD, C. J., and WHITFIELD, J., concur.

TAYLOR, HOCKER and PARKHILL, J., concur in the opinion.