Johnson v. The State of Florida—Syllabus.

J. K. JOHNSON, PLAINTIFF IN ERROR, v. THE STATE OF FLOR-
IDA, DEFENDANT IN ERROR.

1. In an indictment for assault with intent to commit murder
the words "unlawfully and from a premeditated design
to effect the death of A" sufficiently allege the statutory
*"intent"* to commit the felony of murder.

2. To constitute the crime of assault with intent to commit
manslaughter, the assault must be made with intent to
commit manslaughter upon the *person of the assaulted
person.* When the whole trend of the testimony is to
show that such intent if any was directed against a third
person not named in the indictment, the conviction of an
assault with intent to commit manslaughter will be set
aside.

3. Where the evidence clearly justifies the charge, there is a
duty resting upon trial courts to charge *mero motu* upon
the offense of aggravated assault, even though no correct
instruction thereon is requested. PARKHILL J., dissents.

4. In a charge upon self-defense the expression "when a man
is out of danger he should remain out of danger," disap-
proved.

This case was decided by Division A.

Writ of error to the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the
Court.

*Chas. E. Davis,* for Plaintiff in Error.

*W. H. Ellis,* Attorney General, for the State.

COCKRELL, J.: In April, 1905, J. K. Johnson was indicted in the Circuit Court for Taylor county for an assault with a deadly weapon with intent to murder one David Padgett. He was convicted of an assault with intent to commit manslaughter and sentenced to pay a fine of five hundred dollars and the costs of prosecution and in default thereof to be confined in the State Prison for a period of five years.

A motion to quash the indictment was overruled and is basis for the first assignment of error. The argument is that the words "unlawfully and from a premeditated design to effect the death of the said David Padgett" are not sufficiently broad and comprehensive to cover the stautory *intent* to commit the felony of murder, and Ruis v. State, 43 Fla. 186, 30 South. Rep. 802, is cited in support. The position is untenable. See Barber v. State, decided at the last term of this court, 42 So. 86.

The testimony is short and not altogether clear in some aspects. It appears that Johnson had unsuccessfully contested a homestead claim in which David Padgett, John Ellison and Wiley Ellison were interested. Johnson being cast in the suit was settling the costs with the clerk when Padgett invited him outside the court house, the two Ellisons following. When outside John Ellison asked him why he tried to contest his (E.'s) homestead, and either Padgett or Ellison cursed him. Johnson said he would not fight three men, to which Ellison replied that he would fight any way he wanted to. John Ellison "followed him a piece and threw my hat at him and told him to go you damned old coward." Johnson went to his home, procured a rifle and returning towards the court house, saw Padgett, the Ellisons and the clerk standing in front of the steps and waiving to the clerk to stand aside shot "in

the general direction of the three." Padgett and Wiley
Ellison ran up the steps as Johnson fired, but John Ellison
jumped behind a post near the steps. The first shot went
through the corner of the court house and the second
shot hit the post behind which John Ellison was standing.

The only witness for the defense was the defendant him-
self, who testified he shot to frighten, thinking they would
run, and did not shoot to kill.

To constitute the crime of which the plaintiff in error
was convicted there must concur with the use of a deadly
weapon to bring it out of the category of an aggravated
assault, which is a misdemeanor, the further element of an
intent to commit manslaughter upon the *person of the
assaulted party*. Williams v. State, 41 Fla. 295, text 302,
26 South. Rep. 184. Were the jury on the facts justified in
finding that the accused was guilty of an assault with
intent to kill Padgett? The whole trend of the evidence
was rather that if a homicidal intent existed it was di-
rected against John Ellison, who was the more aggressive
mover in the original controversy, and the shot struck the
post behind which he stood and not the steps or that part
of the court house where Padgett was. Padgett himself
says he does not know in what direction the shots were
fired, and the nearest testimony is that of the clerk, who
says that Johnson fired in the general direction of the
three. Had the court submitted squarely to the jury that
to convict of this crime they must be satisfied beyond a
reasonable doubt that Johnson in making the assault in-
tended to kill Padgett, we would have greater hesitancy
in interfering with the jury's verdict, approved as it was
by the trial judge, but the charge given upon this offense
permitted the jury to find the accused guilty if they be-
lieved the homicidal intent was directed against Ellison

and as copied into the transcript before us is contradictory and misleading.

Further, the court did not charge as to an aggravated assault a crime within the issues and the proof. The instruction requested by the defense was technically faulty and was properly refused, but there still remains a duty upon the court in a criminal case, irrespective of mistakes of counsel, to see that the law is fairly and fully given to the jury, even though its refusal so to do may not be ground for reversal; and under the facts of this particular case we think the court should instruct the jury *mero motu* as to what constitutes an aggravated assault.

In its general charge the court used this language: "When a man is out of danger he should remain out of danger." We can not say that this language would lead to a reversal upon the facts before us, but as an abstract proposition while it may accord with the dictates of prudence we cannot say it is part of the criminal jurisprudence of Florida.

We find no substantial error in the charges given except so far as is indicated nor in refusing the instructions complained of.

The attention of the trial court is directed to the form of the sentence in this case. It is clearly violative of Chapter 4026, Acts of 1891. See Thompson v. State, 52 Fla. 113, 41 South. Rep. 899, and cases cited.

The judgment is reversed and a new trial granted.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR AND HOCKER, JJ., concur in the opinion.

PARKHILL, J., *dissenting*: I do not think the 3rd head-note states the point decided by the court. The only question involving the law as applied to the offense of aggravated assault and the duty of the court in reference thereto is presented. by an instruction requested by the defendant. The majority opinion holds correctly that the instruction requested by the defendant upon the law as applied to aggravated assault was faulty and was properly refused. After deciding this question, the majority opinion, as I interpret it, makes the suggestion that the trial court should instruct the jury *mero motu* upon the next trial of the case as to what constitutes an aggravated assault. In making this suggestion, the majority opinion states "there still remains a duty upon the court in a criminal case irrespective of mistakes of counsel, to see that the law is fairly and fully given to the jury, even though its refusal so to do may not be ground for reversal."

The head-note does not even contain the qualification suggested by the last clause in the above quotation from the opinion, to-wit: "even though its refusal so to do may not be ground for reversal;" but declares broadly that "where the evidence clearly justifies the charge, there is a duty resting upon the trial courts to charge *mero motu* upon the offense of aggravated assault, even though no correct instruction thereon is requested."

In Irvin v. State, 19 Fla. 872, text 890, the court said: "The fourth error assigned is, that the court erred in its charge to the jury as is fully set out above; and that it should also have instructed them as to what constituted murder in both the first and second degrees.   *   *   *
The attention of the court below should have been called to the error alleged at the time, and the instruction asked for should have been written out as provided by the laws,

4—S C

and presented to the judge," &c.   In Lovett v. State, 30 Fla. 142, 11 South. Rep. 550, the court said: "The futility of objecting that the trial judge did not instruct the jury upon all grades of homicide to which the evidence may be reasonably applicable, must in the absence of a request for instructions on the lesser grades than that of which the accused was convicted be considered as settled in this court, and as meriting no discussion in future opinions." See, also, Blount v. State, 30 Fla. 287, 11 South. Rep. 547. In Lindsay v. State. decided at the present term of this court, the court said, in reference to the contention made by defendant that "a charge ought to have been given by the court *sua sponte*" upon the offense of aggravated assault: "It is the settled practice in this State, however, that, if a party wishes to avail himself of the omission of the court to charge the jury on any point in the case or on all the grades of homicide to which the evidence is reasonably applicable, he must ask the court, at the time, to give the instruction desired, by *writing out* the instruction desired and presenting same to the judge, otherwise he will not be permitted to assign the omission to so charge as error."

For these reasons I respectfully dissent from the statement of the law as expressed in the 3rd head-note, as being likely to lead to confusion in the administration of the law.