ISAAC COLEY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed May 4, 1915.

1. Where in a trial for a felony less than capital, a jury consisting of a greater number than the statute prescribes is empanelled and sworn in chief, and a juror becomes by reason of illness incapacitated to serve, it was not error in the court to declare a mistrial and proceed *de novo.*

2. Where an instruction is given by the court favorable to the accused, the latter has no ground of complaint.

3. On a new trial obtained by the defendant upon an indictment charging murder in the first degree, where in the first trial the defendant was found guilty of murder in the second degree, the court should at the beginning of the second trial instruct the jury that they must confine their inquiries to the offense of murder in the second degree, and to such lower grades of offense as may be legally included therein.

4. Evidence examined and found sufficient to support the verdict of murder in the second degree.

Writ of error to Circuit Court for Clay County; Geo. Couper Gibbs, Judge.

Judgment affirmed.

*A. H. Bell,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J.—Isaac Coley, hereinafter referred to as the defendant, was indicted by the Grand Jury of Clay County in April, 1913, for murder in the first degree for the unlawful killing of Charles Manago in February of that year. He was tried in October, 1913, and convicted of murder in the second degree and sentenced to life imprisonment; on writ of error from this court, the judgment was reversed. Coley v. State, 67 Fla. 178, 64 South. Rep. 750.

The defendant was again put on trial in the Circuit Court for Clay County in December, 1914, this time upon the charge of murder in the second degree; he was again convicted of murder in the second degree and sentenced to life imprisonment and brings the case here for the second time on writ of error.

At the last trial a jury of twelve men was impanelled and sworn to try the issue joined between the defendant and the State of Florida, the taking of evidence was begun whereupon one of the jurors became ill and unable to serve. The court being satisfied that the "juror was too ill to proceed further in the cause, announced a mistrial and discharged said jury from the further consideration of this case and excused said juror." On the same day

another jury, consisting of six men, was impanelled and sworn according to law, to try the cause. After hearing the evidence, the argument of counsel and the charge of the court the jury returned a verdict against the defendant of murder in the second degree as stated.

The defendant by his counsel moved the court for a new trial, one of the grounds being that the trial at which the defendant was convicted was the second time that he had been put in jeopardy at the same term of the court, for the same offense. The overruling of the motion is assigned as error, and this ground and others are discussed by counsel for the defendant in his brief.

It is contended that the court should not have discharged the jury because one juror was ill, that inasmuch as the jury as first impannelled consisted of six men or more than the law provided for the trial of one charged with murder in the second degree, the court should have discharged five more of them in addition to the one who was ill, and such action would have left the number prescribed by the statute for the trial of the case.

In the case of West v. State, 42 Fla. 244, 28 South. Rep. 430, this court held that where in a trial for felony a juror becomes incapacitated by illness after the jury is impanelled and sworn in chief, the proper course is to declare a mistrial and begin *de novo*. Without deciding the point that the defendant could have waived a trial by a jury consisting of a greater number than the statute prescribes for the trial of felonies less than capital, the record does not show that the defendant waived a trial by a greater number than six jurors, nor that he objected to the court declaring a mistrial. There was therefore no error in declaring a mistrial and proceeding *de novo*. See

Dennis v. State, 96 Miss. 96, 50 South. Rep. 499, 25 L. R. A. (N. S.) 36.

It is contended that because the court charged the jury on the subject of aggravated assault, prejudicial error was committed and for that reason the judgment should be reversed. Counsel for the defendant argues that such a charge tends "to lead the jury that Coley could be convicted under the indictment if Manago was not dead."

The language of the court's charge in which reference was made to the crime of "Aggravated Assault" was as follows:

"And gentlemen, as you will see by the instructions following, every homicide is not unlawful, but there are certain classes of homicide that are lawful, and are known in the law as 'justifiable' and 'excusable.' It is therefore the duty of the State before the jury can convict, to show by evidence, that the homicide in the particular trial is an unlawful homicide, and this fact must appear to the exclusion of and beyond a reasonable doubt. If the jury have a reasonable doubt as to whether the particular homicide is lawful or not, then the benefit of such doubt must be given to the defendant and he be acquitted.

Now under the indictment in this case the defendant may if the evidence warrants it, be convicted either of murder in the second degree, murder in the third degree, or manslaughter, or be acquitted.

If you convict him of an unlawful homicide, you must say in your verdict of what degree of homicide you convict him, that is to say if you convict him of murder in the second degree, you say in your verdict 'we the jury, find the defendant guilty of murder in the second degree,

so say we all.' If of murder in the third degree, you say, 'guilty of murder in the third degree', if of manslaughter, you say 'guilty of manslaughter'. If aggravated, you say, 'guitly of aggravated assault.' If you acquit the defendant you say 'not guilty,' and in each instance the verdict is to be signed by one of your number as foreman.

The killing of a human being is either justifiable or excusable homicide or murder or manslaughter, according to the facts and circumstances of each case."

"Whoever assaults another with a deadly weapon not having a premeditated design to effect the death of the person assaulted is guilty of an aggravated assault."

We do not agree with counsel that any harm resulted to the defendant from the language used by the court in this charge. The idea was distinctly conveyed that if the jury had a reasonable doubt as to whether the particular *homicide* was lawful or not they should acquit the defendant. Merely a definition of aggravated assault was given. But in the same charge the jury were told that under the indictment, if the evidence warranted it, the defendant might be convicted of murder in the second or third degree, or manslaughter, or be acquitted. The defendant was convicted of murder in the second degree. That portion of the charge upon the crime of aggravated assault was favorable to the defendant and afforded him no ground of complaint. Chapter 6223 Acts of 1911. See Smith v. State, 25 Fla. 517, 6 South. Rep. 482; Marshall v. State, 32 Fla. 462, 14 South. Rep. 92; Clemons v. State, 48 Fla. 9, 37 South. Rep. 647; Olds v. State, 44 Fla. 452, 33 South. Rep. 296; Bass v. State, 58 Fla. 1, 50 South. Rep. 531; Wooten v. State, 24 Fla. 335, 5 South. Rep. 39; Vickery v. State, 50 Fla. 144; 38 South. Rep. 907; Jordan v. State, 50 Fla. 94,

39 South. Rep. 155. The assignment of error we think has not been sustained.

When the jury was impanelled and sworn the State Attorney read the indictment to the jury. This indictment charged the defendant with the crime of murder in the first degree. After the reading of the indictment the court instructed the jury as follows: "Gentlemen of the Jury:—The defendant in this case having been heretofore tried in this court and convicted of murder in the second degree, and such convictions having been set aside by the Supreme Court of this State, you must confine your inquiries to the charge of which the defendant was before convicted, or to any lower degree or grade of such crime that may be legally included in that for which the first conviction was had. You cannot find this defendant guilty of murder in the first degree. You cannot convict this defendant of any higher crime than that of which the defendant was convicted on the former trial. Neither, gentlemen, can you convict him of any crime legally included within the indictment unless you believe the defendant guilty of such crime, from the evidence introduced in this case, irrespective of such former conviction, beyond and to the exclusion of every reasonable doubt. You cannot consider such former conviction, save, gentlemen, as I have heretofore instructed you, that you cannot because of such former conviction convict this defendant of a higher offense than that of which he has heretofore been convicted, but you must try him upon the sworn testimony which you shall hear in this case, irrespective of such former conviction."

When the evidence was submitted and the arguments concluded, the court in his charge used the following language: "As I have heretofore instructed you, gentle-

men, at the outset of this case, the defendant in this case having been heretofore tried in this court and convicted of murder in the second degree, and such conviction having been set aside by the Supreme Court of this State, you must confine your inquiries to the charges of which the defendant was before convicted, or to any lower degree or grade of such crime that may be legally included in that for which the first conviction was had. You cannot find this defendant guilty of murder in the first degree. You cannot convict this defendant of any higher crime than that of which the defendant was convicted on the former trial. Neither, gentlemen, can you convict the defendant of any crime unless the same is legally included within the indictment, and unless you believe the defendant is guilty of such crime from the evidence introduced in this case, irrespective of such former conviction, beyond and to the exclusion of every reasonable doubt. You cannot consider such former conviction, save, gentlemen, as I have heretofore instructed you, that you cannot because of such former conviction convict this defendant of a higher offense than that of which he has been heretofore convicted, but you must try him upon the sworn testimony which you have heard in this case, irrespective of such former conviction."

Defendant's counsel insist that the court's repeated reference to the defendant's former conviction of murder in the second degree and the reversal of the court's judgment by this court "was an attack on the character of the accused and had the effect of prejudicing the jury against the accused and was unjust."

It was perfectly proper for the court to instruct the jury that they could not find the defendant guilty of murder in the first degree. It may not have been necessary

for the court to have given the jury any reason therefor, but in what way the reason for such direction to the jury was harmful to the defendant we do not perceive.

In cases where an indictment charges an offense which includes offenses of the same character but lower in degree, and the defendant is found guilty of a crime lower in degree than the one charged, the verdict being silent as to the offenses of higher degree included in the offense charged, such finding is in effect an acquittal of the offenses of higher degree included in the crime charged. Johnson v. State, 27 Fla. 245, 9 South. Rep. 208; Ex Parte Vickery, 51 Fla. 141, 40 South. Rep. 77. The former case was referred to in West v. State, 55 Fla. 200, 46 South. Rep. 93, in which the court said that in such cases upon another trial "the court should instruct the jury at the outset of the new trial that they must confine their inquiries to the offense of which the defendant was previously *convicted* and to such lower grades of offense of which he was convicted as may be legally included therein."

The use of the word "convicted" in the language of the court might have seemed to the defendant and his counsel to have been harsher than was necessary and possibly tending to embarrass the defendant and prejudice the jury against him, especially when different language might have been used more pleasant to defendant's ears, as for instance that the defendant had been *"acquitted"* of murder in the first degree; but the court's language was justified by the language of this court quoted from the West case. The jury were told that they should not consider such former conviction in determining the guilt or innocence of the defendant under the charge upon which he was then being tried. The court emphasized the point

that the jury must try the defendant upon the "sworn testimony which they heard in the case irrespective of such former conviction." We think the trial court was careful to prevent any improper inference from being drawn by the jury from the court's remarks.

The evidence was sufficient to sustain the verdict of murder in the second degree. Will Peterson testified that Isaac Coley, the defendant, and Charles Manago had a difficulty at Middleburg, Clay County, Florida, on the night of February 7, 1913, the date alleged in the indict- ment. That in this difficulty the defendant had a pistol and tried to shoot Manago after calling Manago a liar and threatening to shoot him; that Peterson was between Coley and Manago, and the former tried to get at the lat- ter in the effort to shoot him; finally Peterson jumped out of the house, and instantly he heard the pistol fire. Jim Bivins, another witness, said that he got to the house and parted Coley and Manago, who were fighting; the witness asked for the pistol and Coley said Manago had taken it from him. At this time Manago had been shot. The defendant testified that he and Manago were "tuss- ling" when the pistol was discharged. Robert Manago said that Charles Manago came to the witness' house that night; that Charles had been shot in the right side; the witness carried Charles to Dr. Adams, who washed and dressed the wound, a few days later this witness carried the wounded man to the Duval County Hospital in Jack- sonville; there he talked to Mrs. Evans, the matron of the hospital, about the wounded man, and saw him taken into the hospital. Mrs. Evans testified that the wounded man was brought into the hospital where he died from the wound, which was a gun shot wound through his right lung; that he lived only a few days after being brought

to the hospital. The wounded man gave his name as Charles Manago. There was a slight confusion in the witness' mind as to the date when the man was brought to the hospital, but she finally testified that it was in February, 1913. The witness J. W. Evans, husband to the matron of that name, who was at the hospital at the time of the negro's death was positive about the date. The testimony of Will Peterson as to the circumstances of the shooting with the other evidence as to the death of Manago were sufficient if believed by the jury to sustain the verdict rendered.

The judgment of the Circuit Court is affirmed.

TAYLOR, C. J., AND COCKRELL AND WHITFIELD, JJ., concur.

SHACKLEFORD, J., absent.