W. H. HOSKINS, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed July 13, 1915.

1. Where an objection has been sustained to a question but subsequently during the trial the question was answered in effect by the witness, even if there was error in the previous ruling, it was cured by the subsequent admission of the testimony so excluded.

2. In a criminal prosecution, as in the trial of civil causes, the examination and cross-examination of witnesses is largely within the control of the trial judge, and he will not be held in error in overruling objections interposed by the defendant to questions propounded by the State to a witness called in rebuttal on the ground that such questions tend to prove

something which has already been proven by such witness, unless it is clearly made to appear that there has been an abuse of the judicial discretion vested in the trial judge.

3. Where an accused on trial voluntarily offers himself as a witness on his own behalf, he thereby voluntarily subjects himself to any legitimate cross-examination, whether such cross-examination tends to criminate him or not.

4. It is in the discretion of the trial court to permit the introduction of evidence by the State, after the conclusion of the defendant's case, though the same may not be strictly in rebuttal, if it was admissible in the main case, and unless such discretion is abused to the detriment of the defendant, it will not be ground for reversal.

5. Requested instructions, though announcing correct principles of law applicable to the case, are properly refused where such principles are fully covered in other instructions given at the trial, even though couched in different language.

Writ of error to Circuit Court, Jackson County; D. J. Jones, Judge.

Judgment affirmed.

*J. W. Kehoe, A. E. Lewis* and *John H. Carter,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

SHACKLEFORD, J.—W. H. Hoskins seeks relief here from a conviction of the crime of murder in the first degree, with a recommendation to the mercy of the court. During the progress of the trial, the defendant was

introduced as a witness in his own behalf and testified that the deceased had made threats against him, the defendant, prior to the happening of the difficulty in which the deceased lost his life. We copy the following proceedings from the bill of exceptions, which occurred during the examination in chief of the defendant: "The state of his feelings toward me were bad, he had been having ill feelings toward me for about a year. He had made threats against me before. The first time he ever drew a weapon on me or threatened me was about a year ago, maybe not so long or maybe little longer. It was about some negroes, that took place right there at my barn. He come down there and told me I had acted the rascal with him and I told him I didn't think so— Mr. Wilson: If the court please, we don't think it is proper for him to go into details; if he made any threats that is all right. By the Court: He can't state the details, he can state the threat, he can say yes, he did threaten him, if it be a fact, and tell what he said. Mr. Kehoe: I don't desire to change the form of the question: 'Just state what he did and said to you at that time.' By the Court: The objection is sustained. Mr. Kehoe: Your Honor will note an exception. Mr. Buford: I understand the ruling of the court is that he sustains the objection only as to what the witness did? By the Court: Yes, he can state only what he said. Q. State whether or not at any time previous to the day of this difficulty or the night before, if Mr. Norton had ever made any threats against you in your own presence and to your own knowledge, and if so, state when and where the threats were made, what he said and did at the time he was making said threat? A. Me and Mr. Norton disagreed a whole lot, —— He walked down there one

morning when there was going to be a primary election and asked me who I was going to vote for and I told him, and he cursed me and said nobody but a damn negro would vote for them, and I laughed and said, 'Mr. Norton, you are drunk, that is all right,' and he said I couldn't stay at Cypress if I voted for that man, and I told him, well, I was going to vote for him and I guessed I would stay there until I died, or something to that effect,—we had sharp words. He always had his pistol, he didn't present a pistol at that time, but I could see he had it, we just cursed one another. That was a different time to that time I was at the stable and we had some difficulty about a negro. Yes sir, he made some threats against me at the stable about some negroes, that was after that, I couldn't tell how long after that, might have been a month or two months. He came down to my barn one morning,—there was a negro living over on his plantation, I disremember the negro's name, and had agreed to pay his account and the negro said,—— Mr. Norton came down there and said I went over to his plantation with another man to get a team and cursed me about it. He said if he ever caught me on his plantation or if ever heard of me going there again he was going to kill me, and I told him I never went on a man's plantation without his consent. He never made any demonstration with a weapon at that time, he had his pistol, had it in his side pocket."

The first assignment is based upon the ruling of the court, sustaining the objection interposed by the State, to which the defendant excepted, as appears above. No error is made to appear here. Even if the ruling of the court was erroneous, which is not apparent, such error was cured by virtue of the fact that very shortly after

such ruling the defendant proceeded to state what the deceased said and did. As we held in McCall v. State, 55 Fla. 108, 46 South. Rep. 321, where an objection has been sustained to a question but subsequently during the trial the question was answered in effect by the witness, even if there was error in the previous ruling, it was cured by the subsequent admission of the testimony so excluded.

Mrs. R. L. Norton, the widow of the deceased, was introduced as a witness by the State in rebuttal, when the following proceedings took place: "Yes sir, I have already testified that Robert L. Norton was my husband. Q. Had Bob Norton been away from his house on the morning upon which he was killed? Mr. Kehoe: If the Court please, we object to that question: Mr. Buford asked Mrs. Norton yesterday if Mr. Norton left his house more than one time that morning and she said no,—and that was the time he went down a few minutes before she learned he was shot; I object to his bringing her back to prove something that has already been proven. By the Court: My recollection is that there was some testimony on behalf of the defendant to the effect that he came down town and went back and came the second time, and the purpose of this witness is to rebut that testimony. The purpose is to rebut some other testimony, isn't it Mr. Buford? Mr. Buford: Yes sir. By the Court: The objection will be overruled. Mr. Kehoe: Your Honor will note an exception. Q. Had Mr. Norton been away from the house on the morning upon which he was killed at any time before he went away and was brought back dead? Mr. Kehoe: I object, your Honor, on the same grounds. By the Court: Objection overruled. Exception noted. A. No sir he had not.

When he went down town it was after breakfast. It was about half an hour after we had breakfast when he went down town. He had been away from the house fifteen minutes to the outside when I heard he was killed, not more than fifteen minutes. I had been married to Bob Norton nine years, would have been the 19th of this month. Yes sir, I could tell when he was under the influence of whiskey and when he was not. He was not under the influence of whiskey the day before he was killed. I was awake when he came home that night, and he was not under the influence of whiskey at that time. He was not under the influence of whiskey when he left the house next morning. Yes sir, he and I occupied the same room."

The second assignment, based upon the overruling of the defendant's objections to the two questions propounded by the State must be held not to have been sustained. See our discussion in Starke v. State, 49 Fla. 41, 37 South. Rep. 850.

After the State had introduced its witnesses in rebuttal and they had been examined and cross-examined, the following proceedings occurred: Mr. Buford: If the Court please, we desire to recall the defendant to ask him a question we forgot to ask him on cross-examination. By the Court: You may do so. Mr. Kehoe: If the Court please, I don't know what the question is going to be asked the witness, but in the abundance of caution we desire to register an objection to the court requiring the defendant to go upon the stand after he had completed his testimony and come down, and desire the record to show that. he is put on the stand at this time over his protest and over the objection of his counsel.

W. H. Hoskins, being recalled by the State, for fur-

ther cross-examination, testified as follows: "Cross-Examination: Q. Mr. Hoskins, have you ever been convicted of any criminal offense? Mr. Kehoe: I object to the question, it is not in cross of anything, not material in this case, and is brought out at a time after the defendant has been upon the stand subject to cross-examination and both sides had dismissed him. By the Court: The objection is overruled. Mr. Kehoe: Your Honor will note an exception. A. Yes sir. The offense was shooting a man. Yes sir, it was aggravated assault. Mr. Kehoe: Now, if the Court please, we move to strike out the evidence of this witness on this last point, on the ground that it was error on the part of the Court to permit the question to be propounded, the evidence to be brought out after the State and the defendant had both closed their cases. By the Court: Do you move to strike the entire testimony of the witness? Mr. Kehoe: Yes sir, I put my motion in the form I want it to appear in the record. By the Court: The motion will be denied Exception noted."

The third, fourth and fifth assignments are founded upon these rulings. We are of the opinion that they must fail. As we have frequently held, a defendant taking the stand as a witness in his own behalf thereby puts himself on the same footing as any other witness. See Clinton v. State, 53 Fla. 98, 43 South. Rep. 312, 12 Ann. Cas. 150, and Daly v. State, 67 Fla. 1, 64 South. Rep. 358. As we have likewise frequently held, it is in the discretion of the trial court to permit the introduction of evidence by the State, after the conclusion of the defendant's case, though the same may not be strictly in rebuttal, if it was admissible in the main case, and unless such discretion is abused to the detriment of the defendant, it

will not be ground of reversal.  See Davis v. State, 44 Fla. 32, 32 South. Rep. 822.   We would also refer to McQueen v. Commonwealth, 28 Ky. L. Rep. 20, 88 S. W. Rep. 1047, wherein it was held as follows: "It was not an abuse of discretion to permit the commonwealth, on the trial of a criminal case, to recall defendant and prove by him that he had been in the penitentiary."

The sixth and seventh assignments are predicated upon the refusal of the trial court to give certain instructions requested by the defendant.   We have examined such requested and refused instructions and are of the opinion that, in so far as they embody correct principles of law applicable to the case being tried, such principles were fully covered in the general charge of the court.   As we held in Bass v. State, 58 Fla. 1, 50 South. Rep. 531, requested instructions, though announcing correct principles of law applicable to the case, are properly refused where such principles are fully covered in other instructions given at the trial, even though couched in different language.

Finding no reversible error, the judgment must be affirmed.

TAYLOR, C. J., and COCKRELL and ELLIS, JJ., concur.

WHITFIELD, J., absent.