R. A. HAWTHORNE, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed Dec. 19, 1916.

1. Where there is substantial legal evidence to support a verdict and nothing in the record shows that the jury were not governed by the evidence in making their finding, the verdict will not be disturbed as being contrary to the evidence.

2. The proper practice is to move to strike irrelevant testimony which is given in answer to a proper question.

3. It is not error for the trial court to refuse requested instructions which are substantially covered by charges which the court had given.

4. An instruction given by the court which embraces a correct proposition of law applicable to the evidence will not be rendered harmful because the court subjoins a correct reason which underlies the principle of law embodied in the instruction.

Writ of Error to Circuit Court, Manatee County; O. K. Reaves, Judge.

Judgment affirmed.

*John B. Singeltary* and *J. A. Stewart,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J.—The plaintiff in error was convicted in the Circuit Court for Manatee County of an "assault to commit murder in the second degree" and sentenced to im-

prisonment in the penitentiary for a period of five years. The indictment charged that the assault was made upon E. B. Stevens with a premeditated design to effect his death and that the weapon used was a shot gun.

Under the first assignment of error counsel for the plaintiff in error contend that the evidence was insufficient to support the verdict. After a careful consideration of the evidence as shown by the bill of exceptions we have concluded that this assignment should fail.

The evidence as to an alibi exclusive of the defendant's testimony afforded little reason, if any, for a different verdict. The offense was committed between 4:20 and 4:45 o'clock Saturday afternoon, October 2, 1915, on the Manatee Fruit Company's place about two and a half miles from the town of Palmetto. A witness for the defense, Mr. Dormany, said that he saw the defendant Hawthorne, at the Palmetto dock that afternoon "perhaps about 3:30 or 4 o'clock, somewhere along in that time, between 3 and 4, say." On cross-examination he said that he was not positive that he saw Hawthorne that afternoon; he was at the "dock off and on" every day, but the witness could not swear that he saw him there on that day. Mr. Smith, another witness for the defense, said that he saw the defendant pass the livery stable in Palmetto that afternoon "sometime after 4 o'clock, between 4 and 4:30, somewheres like that, I couldn't say positively." On cross examination he said that he made no note of the time; that "It was somewheres after 4 o'clock, I couldn't say what time." The defendant said he was in Palmetto during the morning of October 2nd, and left about 11 o'clock, went home, ate dinner and left the house a little before 1 o'clock, sat down on the roadside for about thirty or forty minutes and went on to Palmetto, arriving there about 2:30

o'clock, where he remained all the afternoon. Aside from this evidence there was. ample to support the verdict. Mr. Stevens, the man who was shot, left the packing house that afternoon about 4:20 o'clock with some money with which to pay the employees of the company who were to be paid at the Barn office about a mile away. The road led through the grove. Mr. Stevens was riding a horse. When he had travelled about half the distance he was shot by some one from behind. Dismounting from his horse and, falling to the ground he arose, turned back a short distance and saw a man with a single barrel shotgun or rifle running away from the place. He recognized the man as the defendant, who was about a hundred feet away. The defendant was arrested that night, one of his shoes was removed from his foot and taken by the sheriff and, others next morning to the scene of the crime. This shoe had a hole in the sole near the toe. The tracks made by the person whom Mr. Stevens saw running away were found and compared with the shoe taken from the defendant. The shoe fitted into one of the succession of foot prints which bore the mark of a worn shoe sole and corresponded with the hole in the defendant's shoe. The defendant had been in the employment of the same company for which Mr. Stevens worked, for eight or nine months, and Mr. Stevens was well acquainted with him. The defendant however had not been at work for about two weeks. When asked on cross-examination how he recognized the defendant, Mr. Stevens said that he recognized him from his "general build," and the clothes the man wore which were blue trousers, white shirt and white hat; that the man was dressed as Hawthorne was dressed the last time Stevens saw him. The wound which Mr. Stevens received was in the right shoulder and according

to the physician who was called to attend him was made either by a small pistol ball or a large buckshot. There was no evidence that the money had been stolen. In view of these facts we are unable to say that there was no substantial legal evidence to sustain the verdict. Nor can we say that there is anything in the record to show that the jury were not governed by the evidence in making their finding. See Robinson v. State, 70 Fla. 628, 70 South. Rep. 595; Bellinger v. State, 70 Fla. 464, 70 South. Rep. 438.

The second and third assignments of error are based upon certain rulings made by the court during the trial on the admission of evidence. A witness by the name of Fuller who in October, 1915, lived on the Manatee Fruit Company's place testified that about a week before Mr. Stevens was shot the witness lost a single barrel shotgun. He was asked: "How came it lost?" To this question the defendant objected on the ground that it "called for immaterial and irrelevant testimony." The court overruled the objection by saying "Let him answer the question. I will strike it out if it is necessary when I see what he says." · The witness answered: "It was stolen before Mr. Stevens got shot." The defendant excepted to the ruling. This is the basis of the second assignment of error. The court could not know what answer the witness would make to the question and therefore permitted him to answer it. The question itself did not indicate that the reply would be immaterial or irrelevant, therefore the objection was overruled. No effort was made by defendant's counsel to strike the testimony of this witness as to the loss of the gun and the examination of the witness proceeded as follows: "Q. How long before Mr. Stevens got shot? A. It was stolen like this week, Thursday or Wednesday, along like then, and he

was shot the coming Saturday week. Q. That gun was stolen the week preceding the week in which Mr. Stevens was shot? A. Yes, sir. Q. Where did you keep the gun? A. At the house. Q. At your house where you lived? A. Yes, sir. Q. Was it stolen from your house? A. Yes, sir. Q. Fuller, do you know Mr. Hawthorne? A. Yes, sir. Q. Did you know him at that time? A. Yes, sir. Q. Do you know whether or not Mr. Hawthorne knew that you had that gun in your house?

"But to the question as propounded defendant then and there objected on the ground that the same called for immaterial, irrelevant, incompetent and inadmissible testimony.

"By the Court: Do you expect to show by other witnesses that this defendant got the gun?

"By Mr. McMullen: No, sir.

"By the Court: Then I will sustain the objection."

After this the witness was again asked without objection to the question or answer: "Q. What kind of a gun was that stolen out of your house? A. A single barrel gun." The evidence was not prejudicial to the defendant as he was in no wise connected with the larceny of the gun, and the court and counsel seemed so to regard it. This court has many times held that when irrelevant testimony is given in answer to a proper question the appropriate remedy is by motion to strike the testimony. See Golden v. State, 54 Fla. 43, 44 South. Rep. 948; Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Rentz v. Live Oak Bank, 61 Fla. 403, 55 South. Rep. 856; Thompson v. State 55 Fla. 189, 46 South. Rep. 842; Putnal v. State, 56 Fla. 86, 47 South. Rep. 864.

The third assignment of error involves the same point. It is insisted that the court erred in permitting the witness Fuller to testify over the objection of the defend-

ant that the gun "was stolen before Mr. Stevens got shot." This answer was part of the same testimony quoted above and was in reply to the question as to how the gun came to be lost.

Even if the evidence was irrelevant, it was not prejudicial, nor was the rule observed to secure its exclusion from the jury, from which it must be inferred that the point was abandoned at the time.

The instruction numbered nine given by the court which forms the basis of the fourth assignment, is as follows: "Where the evidence, however, even if entirely circumstantial, is sufficient to satisfy the jurors of the guilt of the accused, beyond a reasonable doubt, they should convict, otherwise the most atrocious crime might sometimes go unpunished, because persons contemplating the commission of crime are not likely to take eye witnesses with them, unless such eye witnesses are themselves participating criminals." The court in the eighth charge had instructed the jury correctly on the rule as to the value and sufficiency of circumstantial evidence, and while there was no need to add the ninth charge, nor give any reason why circumstantial evidence is admissible to establish a fact, we do not agree with counsel that it was harmful. It is, however, useless and dangerous to make unnecessary excursions into the realm of the law's reason for the admission of any kind of evidence whether testimonial or circumstantial.

The court also charged the jury as follows: "Take the case, gentlemen, and find your verdict as you honestly believe the truth to be from the evidence." This language was also superfluous, but not harmful. They had already been told that the evidence must establish the guilt of the defendant beyond a reasonable doubt before he could be convicted, and they had been sworn to render a

34

verdict according to the evidence. To be told that they should find a verdict as they honestly believed the truth to be from the evidence was merely to exhort them to be honest, which no doubt was unnecessary.

Charges numbered two and three as requested by the defendant were refused and refusal of the court to give them was made the basis of the sixth and seventh assignments of error. These charges were fully covered by the eighth instruction given by the court on circumstantial evidence and were, therefore, properly refused. See Fine v. State, 70 Fla. 412, 70 South. Rep. 379; Hoskins v. State, 70 Fla. 186, 69 South. Rep. 701.

The judgment is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.