S. C. GROOVER, *Alias* S. C. GROVER, *Plaintiff in Error,* v.
        STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed December 17, 1921.

1.  The intention to feloniously deprive the owner permanently
    of his property at the time of the taking is an essential
    element in the crime of larceny, and whether such intention
    existed is a question of fact for the jury.

2.  In a prosecution for larceny where the defendant offers evi-
    dence that the taking was in good faith under a claim to
    title in himself, a presumption of fact arises in his favor that
    the taking lacked the elements necessary to constitute
    larceny.

SUPREME COURT OF FLORIDA.

3. One who obtains possession of an article by trick, device or fraud, with intent to appropriate the article to his own use, the owner intending to part with the possession only, commits larceny when he subsequently appropriates the article.

4. It is not necessary to constitute the offense of larceny that the person taking the property should do so from motives of gain, an intention to deprive the owner of it permanently is alone sufficient when the taking was by stealth and unlawful.

5. A charge to the jury which may be more liberal than the law requires, but in favor of the defendant, will not be considered cause for reversal of the judgment.

6. Evidence examined and found sufficient to show lack of consent to the taking.

7. It is not error to refuse instructions requested by the defendant when such instructions are fully covered by the general charge.

8. Charges inapplicable to the evidence are properly refused.

9. In a prosecution for larceny the *corpus delicti* can not be proved by the confession of the defendant, but such confession may be considered in connection with other evidence to establish it.

10. A recommendation by the jury to mercy in a prosecution for larceny is without authority of law and can not be considered by the court as a circumstance of any significance affecting the weight which the jury gave to the evidence or the credibility of the witnesses.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Judgment affirmed.

*W. C. Hodges* and *Fred H. Davis,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

ELLIS, J.—The plaintiff in error, hereinafter referred to as the defendant, was indicted, tried and convicted in the Circuit Court for Leon County for the larceny of an automobile alleged to be the property of H. V. Maund. It is contended in behalf of the defendant that the evidence was insufficient to show those elements in the offense of larceny, described as the *animus furandi* and *lucri causa.* The intention to steal, that is feloniously to deprive the owner permanently of his property at the time of the taking is an essential element in the crime of larceny and whether such intent existed is a question of fact to be determined by the jury from all the facts of the case. See Hendry v. State, 39 Fla. 235, 22 South. Rep. 647; Long v. State, 44 Fla. 134, 32 South. Rep. 870; Jarvis v. State, 73 Fla. 652, 74 South. Rep. 796.

The rule announced in the case of Dean v. State, 41 Fla. 291, 26 South. Rep. 638, that where one in good faith takes another's property under claim of title in himself however puerile or mistaken the claim may be he is exempt from the charge of larceny, is not, as was said in Long v. State *Supra,* a rule of law to be given in charge to a jury in a prosecution for larceny, but a presumption of fact which the jury may apply and which may guide the Court in cases where it is applicable in determining the sufficiency of the evidence to support the verdict of guilty. And in Finlayson v. State, 46 Fla. 81, 35 South. Rep. 203, this Court speaking through Mr. Justice Cockrell approved the doctrine announced by a trial court in a charge given in a

prosecution for larceny that "A bailee who has lawful possession cannot commit larceny; the possession however must have been originally obtained lawfully and without the intent to appropriate the property to his own use. One who obtains the possession by trick, device or fraud with intent to apropriate the property to his own use, the owner intending to part with the possession only, commits larceny when he subsequently appropriates it," and said "The fraud vitiated whatever right might otherwise have been acquired by virtue of the apparent voluntary parting with the possession by those rightfully entitled thereto. Such act was at the common law larceny, and no statute was needed to make it a crime; nor does it come within our embezzlement act." See also Sykes v. State, 78 Fla. 167, 82 South. Rep. 778. And in the case of Lowe v. State, 44 Fla. 449, 32 South. Rep. 956, speaking through Mr. Justice Carter, the Court said "That a taking by the voluntary consent of the owner or his authorized servant or agent, even though with a felonious intent, does not constitute larceny. But where the criminal design originates with the accused, and the owner does not in person or by an agent or servant suggest the design, nor actively urge the accused on to the commission of the crime" such conduct does not amount to consent in law.

To discuss the circumstances of the taking of the automobile by the defendant would result in no elucidation of his real purpose in taking it away. The owner had authorized him to use the machine while they were jointly interested in some business activities in Leon County but no authority had been given him to take the automobile out of the State. The defendant said he thought there was no harm in taking it away as he intended to return it, but whether that statement was true was a question of fact

for the jury to decide from all the facts in the case. The defendant obtained possession of the car from Mr. Fleming, a business associate of the owner, but the defendant did not tell Fleming where he was going nor when he would return. He called for his wife at the hotel and together they traveled to the State of Georgia, going first to Valdosta and thence to Atlanta and from there they went to the State of North Carolina. During the trip and while in the State of Georgia he substituted for a license tag which was originally placed on the car in Florida by the owner, a license tag which he found on the roadside upon an abandoned automobile. He said that he wrote to the owner telling of his whereabouts and purpose, but that letter was never received. He said he told the officer in North Carolina that the car belonged to Mr. Maund, but he made no such disclosure until he was either actually in the custody or upon the eve of arrest for the violation of some law of North Carolina. The jury considering the inconsistency and inherent weakness and improbability of the defendant's story, concluded that he obtained possession of the automobile by deceit, having already formed the intention to steal it and deprive the owner permanently of it. We think the evidence was amply sufficient to support the finding but even if we were doubtful of its sufficiency we could not under the rule obtaining in this State substitute such doubt for the affirmative finding of the jury concurred in by the trial court who denied the motion for a new trial. As to the element described as *lucri causa* that is on account of gain, it was a phrase borrowed from the Roman Law and ''according to the weight of authority the felonious intent required for larceny'' was not necessarily an intent to gain advantage, an intent to deprive the owner of his property was enough. See 25 Cyc. 53; Rosc. Crim. Ev. 526; Williams v. State, 52 Ala. 411; Best v. State, 155 Ind. 46; 57 N. E.

Rep. 534; 2 Bishop's Criminal Law, Sects. 842-843-846-848; Clark's Criminal Law, P. 267; Delk v. State, 64 Miss. 77, 1 South. Rep. 9; State v. Davis, 38 N. J. L. 176; State v. Caddle, 35 W. V. 73, 12 S. E. Rep. 1098.

There is much difference of opinion as to whether a necessary element of the crime of larceny at common law was the existence, on the part of the accused at the time of the taking, of a desire for gain. The differences may grow out of the meaning which the term *"lucri causa"* had in the Roman Law. Undoubtedly the "taint of selfish greed" in the taker distinguishes the act from a mere trespass and is actually present in every larceny but the degree of selfish greed may be ever so slight to satisfy the doctrine. The term *"animo furandi"* is the expression used in the common law as the equivalent of the Roman civil law term *"lucri causa."* Blackstone says the "taking and carrying away must also be felonious that is done *animo furandi* or as the civil law expresses it *lucri causa."* The true view says Mr. Bishop, where the rule of *lucri causa* is conceded is simply that the taker should mean some advantage to himself in distinction from mischief to another. While the taking of property for temporary use only may amount only to a trespass yet it is not of itself inconsistent with an intent wholly to deprive the owner of it and therefore does not seem necessarily to negative the felony. It is, said the Supreme Court of New Jersey speaking through Mr. Chief Justice Green, simply a piece of evidence which the jury may regard as showing a taking from wantonness, mistake, frolic or thievish design according to circumstances. See State v. South, 28 N. J. L. (4 Dutcher) 28.

. In that case the Court held that an instruction to the effect that if the defendant at the time he took the property intended to return it and did not return it pursuant

to such design he was nevertheless guilty of larceny was erroneous, because the question of intention was not left to the jury. The case under a rule prevailing in that State was certified to the Supreme Court for an advisory opinion.

A fraudulent taking of the personal property of another without his consent, and with the intention to permanently deprive the owner of it constitutes larceny. Any taking that may result by a natural and immediate consequence in the entire loss and deprivation of the property to the owner is larceny. Whatever gain, advantage or satisfaction the taker may get out of such conduct is a sufficient *"lucrum"* to constitute the element of *lucri causa.* "An abandonment to mere chance is such reckless exposure to loss that the guilty party should be held criminally responsible for an intent to lose." State v. Davis, *Supra.*

In the case at bar the charge of the Court upon this subject was as follows: "Larceny is the fraudulently and feloniously taking and carying away of the personal property of another without the owner's consent or knowledge, with the intention to permanently appropriate such property to the taker's use, and to permanently deprive the owner of the possession of such property." This instruction was followed by one to the effect that if the jury believed that the defendant obtained the possession of the automobile without the consent of the owner, or with his consent or that of his agent by deceit, falsehood or fraud, and that at the time of such fraudulent taking he intended permanently to deprive the owner of the possession of it *and convert* it to his own use, then the jury should find the defendant guilty.

Here both the elements of *animo furandi* and *lucri causa* were embraced in the charge and the question of intention

was left to the jury. No complaint of this charge is well founded from the standpoint of the defendant. It was more liberal than the law requires. But the Court left the question of intention with which the property was taken with the jury where it should have been placed. If the jury believed the defendant's statement as to his intentions concerning a return of the property at the time he carried it away they could have under that charge acquitted him.

It is contended that the State failed to prove the "non consent" of the owner of the automobile to the taking by the accused. Albritton v. State, 81 Fla. 684, 88 South Rep. 623.

The defendant testified, that he was going to take his wife away. Where he did not inform the Court but that he was to take her out of the State is shown by his next words, "I went over to Valdosta and tried to sell some stock the next day, and went into Atlanta." It is a matter of common knowledge that the above named cities are in the State of Georgia. He said that Mr. Fleming, an agent of Mr. Maund, told him to "go ahead and take the car" and that if he "was gone for three weeks nobody would kick." By which language the idea was supposed to be conveyed that the defendant being anxious to go to work after about two weeks of enforced idleness waiting upon the "Comptroller to give me my license," told Mr. Fleming that he the defendant had to go to work but that he was going to take his wife to Atlanta and "leave her there and let her go on," whatever may have been meant by that statement, and that he would be gone about three weeks selling oil leases for Maund in Thomasville, Valdosta, Atlanta, Greenville, South Carolina, and Greensboro, North Carolina and perhaps other points north. But Mr. Fleming

said that his understanding was that the defendant "was to use the car and go out and see Mr. Maund, and from there he and Mr. Maund were to go out and see a fellow named Speed and sell some stock, and I was under the impression that Mr. Jones told me that Groover wanted the car and he would be back at five o'clock that afternoon." The next time Mr. Fleming saw the car it had been recovered in North Carolina and brought back to Tallahassee. Mr. Maund said that the defendant "did not have the exclusive use of that car from me for any indefinite period" and again "I never authorized this defendant to take that car out of the State for any purpose at all. I never authorized him to use it for himself for any indefinite time." Mr. Maund also testified that he and the defendant "were not selling oil stock together." We think that the jury were fully justified in the conclusion from the above recited facts, that the defendant took the car with the intention of driving it to Georgia and other States farther away and that such taking was without the consent of the owner, and that temporary possession of the car for this undisclosed purpose was obtained by falsehood, fraud or deceit. See Finlayson v. State, *Supra.*

There was of course a sufficiency of evidence in the testimony of the officer Banks, who made the journey to North Carolina to fetch the car back and who upon the way home was seemingly voluntarily accompanied by the defendant, to convict the latter of a thievish design in taking the car. "He voluntarily told myself" prefaced this witness unchallenged, that he, the defendant "took the car when he was drinking"; that "a time or two on the trip he started to turn back but did not know how Mr. Maund would take it"; "that he was broke and knew that he did not have any right to take the car"; "He said he would come back

and take his medicine." "That he had been gambling and had lost· what money he had." Either one of these statements was damaging to the last degree, each showed culpability, guilty knowledge, a sneaking, thievish purpose in taking the car. The evidence was like piling Ossa on Pelion, it was supererogatory, superfluous, needless, excessive and if the jury, whose province it was to believe it accepted it as worthy of consideration it alone was sufficient to convict the defendant of a fraudulent design.

The second assignment of error is not argued and will be deemed to be abandoned. See, Caldwell *et al.* v. Peoples Bank of Sanford, 73 Fla. 1165, 75 South. Rep. 848; Reynolds v. State, 34 Fla. 175, 16 South. Rep..78; McDonald v. State, 46 Fla. 149, 35 South. Rep. 72; Ward v. State, 51 Fla. 133, 40 South. Rep. 177.

The third assignment of error is based upon the refusal of the Court to give the following charge: "The Court further charges you that if you believe from the evidence that the defendant had the consent of H. V. Maund to use the automobile in question, or, if you have a reasonable doubt as to whether said defendant had such consent of said H. V. Maund to use said automobile, either within the State or anywhere else, you should find the defendant not guilty." There was no error in the refusal of the charge not only because it was entirely inapplicable to the evidence but the jury had been fully instructed by the Court upon the point that the burden rested upon the State to prove a taking without the consent of the owner. See, Fine v. State, 70 Fla. 412, 70 South. Rep. 379; Clark v. United Grocery Co., 69 Fla. 624, 68 South. Rep. 766; Stimson v. State, 76 Fla. 421, 80 South. Rep. 506; Atlanta & St. Andrews Bay Ry. Co. v. Kelly, 77 Fla. 479, 82 South. Rep. 57.

The fourth assignment of error rests upon the refusal of the Court to give the following instruction: ''The Court further charges you that the defendant should be found not guilty by you, if you have a reasonable doubt as to whether the defendant had the consent of any lawful agent of said H. V. Maund to take and carry away the automobile in question.'' There was no error in the refusal of this instruction. Counsel contend that it was applicable to that portion of the testimony of Mr. Maund in which he stated that Jones worked for him and had about as much custody over the car as he had and he permitted Jones to use the car as he chose. There is nothing in that language which indicated that it was Mr. Maund's purpose to say that Jones had the authority to permit the defendant to take the car out of the State or to use it for any purpose whatsoever. Mr. Maund had testified that the car was used in his business by Mr. Jones who went on collecting trips and that Mr. Maund himself had taken the defendant with him to several places in the county, but there is nothing in the testimony of any of the witnesses to which a charge like that requested was applicable.

The fifth assignment of error rests upon a modification of a charge requested by the defendant as follows: ''If the defendant took the automobile in question in good faith, reasonably and in good faith believing that he had the consent of the owner H. V. Maund or of his agent to take said automobile, you should find him not guilty.'' The Court gave the instruction with the following modification ''Provided, that such consent was not obtained by deceit, fraud, falsehood or misrepresentation, and that the defendant did not intend to permanently deprive the owner of the possession of such property and convert it to his own use.'' From what has been said in this opinion it follows that

the charge was free from error. It is contended that if the defendant took the car believing that he had the consent of the owner to do so he would be exculpated if as a matter-of-fact he did not have the "actual consent" of the owner. In the discussion of this assignment counsel took exception to the use of the word "consent" as used in the charge. It was used first in that portion of the charge which was requested by the defendant. The word appeared in the following phrase "consent of the owner." The Court merely qualified that phrase by saying that provided "such consent", that is to say, consent of the owner was not obtained to deceit. There was nothing misleading in the charge. The defendant cannot be supposed to have the belief that he had the owner's consent to taking the car away if he knew that he had obtained possession of the car by fraud and deceit. For as is stated in the case of Finlayson v. State, *Supra*, "The fraud vitiated whatever right might otherwise have been acquired by virtue of the apparent voluntary parting with possession" by the owner.

The sixth assignment of error is abandoned.

The seventh assignment of error rests upon the Court's refusal to give the following charge: "Before the crime of larceny can be committed, the taking of the property must have been unlawfully committed. If the taking of the property was lawful, or with the consent of the owner or his agent, there can be no crime of larceny, even though the taker later apply the property taken to a different use than that for which the consent was given." There was no error in the refusal of this charge, because it is not inconsistent with the idea that although consent may have been obtained to the use of the car for one purpose while the defendant had in reality, through deceit obtained it

for another purpose, the possession would not be unlawful. If possession had been obtained in that manner it could not be said that the owner had given his consent to the use of the car.

The eighth assignment attacks a charge given by the Court at the request of the defendant with a certain modification. The charge requested was "The mere fact that the defendant may have used H. V. Maund's automobile for a longer time or for a different purpose than that to which Maund's agent had given his consent, if you find such to be the facts of the case, will not authorize you to find the defendant guilty." The modification made by the Court was as follows: "as one of the elements of larceny is the intent to permanently deprive the owner of the possession of such property." This assignment is not argued further than is contained in the criticism that the charge as modified by the Court was "argumentative."

No authority whatsoever is cited in support of the proposition that it is error for the Court to give a reason for a rule of law. It may not always be necessary to do so but it can seldom if ever be harmful. Aside from this, however, the addition to the charge made by the Court was favorable to the defendant and therefore cannot be the basis of complaint by him. See Coley v. State, 69 Fla. 568, 64 South. Rep. 751; Williams v. State, 73 Fla. 1198, 75 South. Rep. 785; Hawthorne v. State, 72 Fla. 524, 73 South. Rep. 590.

The ninth assignment of error attacks the order of the Court overruling defendant's objections to a question propounded by the State attorney to the witness W. F. Banks as follows: "Please state to the Court and the jury what you know in regard to the matter, and what voluntary statements ———". The objection of counsel was over-

ruled and the witness proceeded not to answer the question but to give an account of his activities in connection with the recovery of the car. So far his answer to the question was harmless, not responsive to the question and not damaging to the defendant. The State attorney then asked this witness what he did with the defendant, whether the witness brought him back and what the witness did with the car and "what voluntary conversation was had with the defendant." The defendant objected to that portion of the question which called for any statement from the defendant upon the ground that the *corpus delicti* had not been proven. It is contended by counsel for the defendant that it is not competent to prove by the confession of the defendant that he had committed larceny until the State had already made a perfect case against him.

The rule that the *corpus delicti* can not be proved by the confession of the defendant as a general proposition is true but the *corpus delicti* in larceny consists of two elements, namely: that the property was lost by the owner and that it was lost by a felonious taking and while it can not be established by the confession of the defendant alone it is the rule that such confessions or admissions may be considered in connection with the other evidence to establish it. See, 17 R. C. L., P. 64; Sanders v. State, 167 Ala. 85, 52 South. Rep. 417, 28 L. R. A. (N. S.) 536. Note. The rule is stated in the State v. Brinkley, 55 Or. 134, 105 Pac. Rep. 708, to be as follows: "while an extra-judicial confession or admission of one charged with larceny is not sufficient of itself to sustain a conviction and there must be other evidence of the *corpus delicti*, yet it seems to be the rule that such a confession or admission may be considered in connection with the other evidence, to establish the *corpus delicti*, and that it is necessary to prove the

*corpus delicti* by evidence entirely independent and exclusive of the confessions or admissions.''

The existence *vel non* of the intention to steal is not often capable of direct proof but is a matter of inference from the circumstances.

In this case the State had by other evidence undertaken to show a taking of the property, which was not disputed, and that it was without the consent and against the will of the owner. According to the rule announced in that state of case admission of the defendant as to the reason or intention which controlled him in taking the property was admissible. The witness, Banks, said that the statement was ''voluntary.'' No challenge of that conclusion of fact was made so it is assumed that the statements made by the defendant were made without any threats or hope of reward or any undue influence exerted upon him. We have examined the evidence and are of the opinion that it was sufficient to sustain the conviction.

The recommendation to mercy by the jury being without authority of law and entirely beyond their province cannot be considered as a circumstance of any significance affecting the weight which they gave to the evidence or the credibility of the witnesses and the statement of the defendant that Mr. Maund said to him that he, Maund, ''was satisfied that I had not taken the car with any intention of stealing it'' was a wholly irrelevant, and immaterial one of no probative value whatsoever. It is perfectly obvious that the opinion of Mr. Maund as to the defendant's intentions could not determine the criminality of the act because the circumstances under which the car was taken by the defendant are entirely inconsistent with the alleged conclusions of Mr. Maund, besides the latter in his testimony of rebuttal

impliedly contradicted the statement of the defendant on that point.

We find no error in the record and therefore the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.