J. C. L. LONG, APPELLANT, VS. THE STATE OF FLORIDA, APPELLEE.

1. An effort to conceal the property of another to prevent the owner from discovering it, or giving evasive answers when questioned in relation to it, is evidence of felonious intent.

2. A taking by mistake or accident, where the *animus furandi* forms no part, is not felony.

3. The mere presumption of guilt may be rebutted by evidence of the conduct of the party, or by his general character for honesty and integrity.

4. Where the proof of guilt is conclusive, evidence of character will not be considered.

5. The Judge may omit to charge the Jury without error when no instructions are specially requested in writing, but when he charges the Jury he must confine himself to the law applicable to the case, and reduce his charge to writing before it is delivered.

Appeal from Jackson Circuit Court.

This case was decided at Tallahassee.

A statement of the case is contained in the opinion of the court.

*McClellan & Barnes* for Appellant.

*James M. Landrum*, Solicitor, for the State.

BAKER, J., delivered the opinion of the court.

At the fall term of the Circuit Court in Jackson county, John C. L. Long was indicted for larceny, and during the term was tried, convicted and fined in the sum of fifty dollars.

Motion was made for arrest of judgment and new trial, which was overruled, and an appeal taken to this court.

The errors assigned were—

1st. That the evidence did not sustain the verdict.

23

2d. That the Judge who tried the case below did not reduce his charge to the jury to writing and file it in the case, though he did charge the jury.

On examination of the record, we find that the only testimony that in any way connects the prisoner with the alleged crime is found in his own confessions or statements made to Hollis, the tanner, Isaac W. Robinson, the owner of the steer charged to have been stolen, Scurlock, his overseer, and to Geo. W. Robinson.

Hollis testifies that two of Mrs. Finlayson's sons, little boys, brought a large beef hide to his tan-yard. Several days after he asked the prisoner and John Finlayson whether it was a bull's hide or a steer's. They laughingly said it was a bull's hide. A few days after, the prisoner, in passing by, said to witness that "it was a steer's hide, and upon being asked, said it was not his hide."

Isaac W. Robinson testifies, that about six weeks previous he found a steer's head and two or three ribs; that he recognized the head, by the horns, as being the head of his steer. About the 20th of September he visited Tallahassee, and on his return was informed by his brother and overseer that the prisoner had been to his house to settle for a steer of his, which John Finlayson had killed by accident. On the 8th day of October, he was met by the defendant in the street at Marianna, who stated to him "that he had been to see him about a steer supposed to be his, and which John Finlayson had accidentally killed, and that he would pay for it." He further stated that John Finlayson and himself were out hunting for one of Mrs. Finlayson's beeves, defendant heard the report of a gun and went in the direction of the firing, when he saw John Finlayson standing over a dead beef; defendant said to Finlayson, that is not your mother's beef, and Finlayson remarked that he shot it accidentally, it being near one of his mother's, which he shot and hit at the same time, and that the steer ran in the way

just at the moment of shooting, and was hit in the neck, and Finlayson said: Long, let's butcher it, and when we find out the owner we will pay him for it; and defendant assisted Finlayson in butchering the beef.

Witness said that he had known defendant about eight years, that he had a good character in the community where he lived; that he was satisfied with his conduct so far as he was concerned, and had always regarded defendant as a good citizen and an honest man.

George W. Robinson and Scurlock both concur in the statement made by I. W. Robinson; and both testify to the good character of the prisoner. Scurlock states that he has known him five or six years, and was with him two years in the service; has never known anything derogatory to his character; has always regarded him as a good citizen and an honest man.

James D. Wilson, witness for prisoner, said he had known him about twelve years, and that he had always borne a good character for honesty and integrity.

We have deemed it necessary to a clear understanding of the case to quote largely from the testimony, and will now examine some of the principles of law that seem applicable to such evidence.

In larceny, the criminal intention constitutes the offence, and is the criterion which distinguishes it from trespass. Where the act is done clandestinely, or where there is an effort to conceal the possession of another's property, or prevent the owner from discovering it, there is evidence of felonious intent; but the taking of another's property by mistake or accident, where the *animus furandi* forms no part, is not felony.

Applying these legal principles to the evidence, there is nothing that would raise the slightest presumption of the guilt of the prisoner, except his evasive answers to the questions of the witness Hollis; but there is sufficient evidence

in his conduct and subsequent explanations to rebut any presumption of felonious intent. He was not present when the steer was killed, and was directed to the spot by the firing of a gun. On his arrival he accuses Finlayson of killing a beef that did not belong to his mother, who informs him that the killing was an accident. He only consented to aid in butchering the beef when the proposition was made to pay for it when the owner could be found. He did not wait until he was accused or prosecuted, but sought to make payment as soon as the owner was ascertained.

We cannot doubt that he believed the statement of Finlayson that the steer was killed by accident, for his whole course, under the peculiar circumstances in which he was placed, seems to have been prompted by a desire to do right, and to protect the interest of the owner and save him from sustaining any loss by the accident.

The witnesses all testify that his general character is good, and that he had always sustained a reputation for honesty and integrity; thereby raising a strong presumption that a person who has maintained a fair reputation for many years would not be guilty of a dishonest act, or commit a most degrading crime.

If the evidence in this case had been so clear and conclusive as to satisfy the minds of the jury, and leave no doubt as to the guilt of the party, then character, however excellent, could not be considered. Russell on Crimes, p. 785.

Applying this rule of law to the evidence in this case, the prisoner was certainly entitled to the benefit of the character for honesty and integrity given him by all the witnesses; and we find no difficulty in arriving at the conclusion that the verdict of the jury was unsupported by the testimony, and that the Judge of the Circuit Court erred in refusing to grant a new trial.

The point raised in the second assignment was considered

Long vs. The State of Florida—Opinion of Court.

in the case of Duggan vs. The State, 9th Fla., 516, and the rule there given seems clearly applicable to this case.

The record shows that the court did charge the jury. It is then stated that the jury "having heard the evidence, argument of counsel, and received the charge of the court, returned into court the following verdict," &c.

The language here used is much stronger and more conclusive than that suggested by the court in the case above cited, and furnishes sufficient evidence that the court did deliver a charge to the jury, which ought, under the statute, to have been reduced to writing and filed.

But such charge not appearing upon the record, we must come to the conclusion that it was not reduced to writing as required by the statute of 1848.

The Judge may omit to charge the jury in any case when he thinks it unnecessary, without any violation of this statute, unless instructions are specially asked by counsel in writing, on some point or points of law arising during the trial. But if he undertakes to charge the jury, he must confine himself to the law applicable to the case, and reduce his charge to writing before its delivery.

It is, therefore, ordered that the judgment of the Circuit Court be reversed and set aside, and a new trial awarded.