CHARLIE HELTON, MARSHALL GIBSON and JOHN JOHNSTON
v. STATE.

185 So 864.
Opinion Filed September 27, 1938.
On Rehearing January 27, 1939.

*John Lewis Reese,* and *Coe & McLane,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General for the State.

PER CURIAM.—In this cause Mr. Chief Justice ELLIS, Mr. Justice WHITFIELD and Mr. Justice TERRELL are of the opinion that the judgment of the Trial Court should be affirmed while Mr. Justice BROWN, Mr. Justice BUFORD and Mr. Justice CHAPMAN are of the opinion that the said judgment should be reversed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the judgment should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the judgment should be affirmed, therefore it is considered, ordered and adjudged under the authority of State, ex rel. Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the judgment of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.

BUFORD, J.—The writ of error brings for review judgment of conviction of the plaintiffs in error of the crime of the larceny of a hog.

Without discussing the questions presented as have been stated in the brief for plaintiff in error, we may say that there are two questions the determination of which will settle the disposition of the case here. The first is whether or not the evidence is sufficient to warrant the conviction and the second, whether or not a certain conversation had between the defendants just before the crime was committed was admissible in evidence.

It is the contention of the plaintiffs in error that the evidence of felonious intent was not sufficient and that the sustaining of the objection by the States Attorney to the

accused testifying, as to what was said between them before the commission of the crime, was error.

The record shows that the defendant Helton at the time the crime was alleged to have been committed had just returned from a sojourn of about twenty months in the Federal Penitentiary in Atlanta, where he had served a term subsequent to conviction of some offense against the Federal intoxicating liquor laws;

That on the day when the larceny is charged to have been committed he was riding with his wife and passed a place which belonged to, or was in possession of, Frank Carter and that Helton and his wife observed a rather large hog in a pen on the Carter place; that Mrs. Helton then and there told her husband that that hog was their property and had been raised from a pig during his absence; that Helton believed her statement. They proceeded a short distance down the road and met the two defendants, Gibson and Johnson. They all went back together to the Carter place and there the three of them got the hog, loaded him on Gibson's car and took the hog to the home of Helton's sister, where Helton lived. There, later in the day, Frank Carter found the hog. Helton admitted that he had taken the hog from Carter's place, believing it to be his own because his wife had told him it was.

The asportation of the hog occurred somewhere about the middle of the day. The taking was open and in sight of the Carters' neighbors. One of them at least testified that Helton was told that that was Carter's hog and Helton replied that it was not Carter's hog but was his, Helton's.

We think that the uncontradicted testimony, together with all the surrounding circumstances, was sufficient to show that the hog was taken without any felonious intent on the part of Helton and that he took it under the *bona fide* belief that his wife had told him the truth and that her identification of the hog as the property of the Heltons was genuine.

In Groover v. State, 82 Fla. 427, 90 Sou. 473, it was held: "In a prosecution for larceny where the defendant offers evidence that the taking was in good faith under a claim to title in himself, a presumption of fact arises in his favor that the taking lacked the elements necessary to constitute larceny:"

It was also held in that case: "The intention to feloniously deprive the owner permanently of his property at the time of the taking is an essential element in the crime of larceny, and whether such intention existed is a question of fact for the jury."

In Long v. State, 11 Fla. 295, the Court said: "In larceny, the criminal intention constitutes the offense, and is the criterion which distinguishes it from trespass. Where the act is done clandestinely, or where there is an effort to conceal the possession of another's property, or prevent the owner from discovering it, there is evidence of felonious intent; but the taking of another's property by mistake or accident, where the *animus furandi* forms no part, is not felony."

In Baker v. State, 17 Fla. 406, quoting from Bishop's Criminal Law, Vol. 2, Sec. 851, it was said:

"In all cases where one in good faith takes another's property under claim of title in himself, he is exempt from the charge of larceny, however puerile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another believed to be the true owner. Still, if the claim is dishonest, a mere pretense, it will not protect the taker.

"The gist of the offense is the intent to deprive another of his property in a chattel, either for gain or out of wantonness or malice to deprive another of his right in the thing taken. This cannot be where the taker honestly

believes the property is his own or that of another and that he has a right to take possession of it for himself or for another for the protection of the latter."

It is true that whether or not the act was committed with felonious intent is a jury question but when the evidence of good faith is uncontradicted and all the circumstances corroborate the claim of taking in good faith of ownership, the jury is not warranted in discarding that testimony and convicting the defendant merely because he has taken the property of another.

As to the second question stated above, the defendants Gibson and Johnson both sought to explain their connection with the taking of the hog by testifying as to what occurred between them and the defendant Helton which caused them to be present and participate in the taking of the hog. The conversation which occurred between them was material. They each attempted to show that they met Helton and his wife in the road and that Helton told them that they, the Heltons, had found one of their hogs at the Carter place and that Helton asked Gibson and Johnson to go with him as a matter of accommodation and help him get his hog and take it home. This was evidence which they had a right to present to the jury for the purpose of showing that there was no criminal intent on their part but that they acted in good faith, believing that they were assisting the owner to take possession of his own property and carry it to the place where he lived.

The conversation was so closely connected with the asportation of the hog as to be a part of the *res gestae* because they went immediately following this alleged conversation to the Carter place and got the hog.

For the reasons stated, the judgment should be reversed.

Brown and Chapman, J. J., concur.

Ellis, C. J., and Whitfield and Terrell, J. J., dissent.

## On Rehearing.

Per Curiam.—On rehearing the opinion written by Mr. Justice Buford, and filed September twenty-seventh, 1938, is adopted as the decision of the Court, and it is, therefore, ordered that the judgment of the lower court be, and it is hereby reversed.

Terrell, C. J., and Whitfield, Brown, Buford, Chapman and Thomas, J. J., concur.